**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD WYATT,** | : | |
| **Plaintiffs** | : | |
| **v.** | : | **CASE NO. 15-2259** |
| | : | |
| **PHILADELPHIA HOUSING** | : | |
| **AUTHORITY, et al.** | : | |
| **Defendants.** | : | |

**MEMORANDUM OPINION**

**Rufe, J.** **March 1, 2016**

After being terminated from employment by the Philadelphia Housing Authority ("PHA"), Plaintiff filed this action alleging violations of various state and federal laws against the PHA and his union. Defendants have filed Motions to Dismiss the Amended Complaint. In response to the Motions, Plaintiff voluntarily dismissed several of his claims, but opposed the Motions with regard to other claims. For the reasons set forth herein, the Motions to Dismiss will be granted.

## I. Pertinent Facts Alleged in the First Amended Complaint

Plaintiff alleges that, until November 17, 2009, he was employed as a plasterer with Defendant Operative Plasterers' and Cement Masons' International Association Local 008 ("Union"). Plaintiff was earning $24.80 per hour for forty hours of work per week in a "prevailing wage job." Plaintiff's union benefits included health benefits, an annuity account, and a pension.

Beginning around November 17, 2009, Plaintiff began working as a provisional employee of the PHA. The PHA has a residency requirement which requires in-house employees to live in Philadelphia County. Provisional employees are not subject to the residency

requirement. The PHA has an agreement with his Union governing certain conditions of employment (the "CBA").

On or around September 2, 2012, Plaintiff became an in-house employee of the PHA, working as a plasterer maintenance man, rebuilding chimneys. He was told that if he did not agree to work in-house, he would lose his job, and he agreed rather than lose his position. Beginning later that month, he complained at union meetings about becoming an in-house employee for PHA, as it affected his benefits. Union leaders were hostile and told him he had no right to speak because of his status as a journeyman.[1]

Beginning in 2013, Defendants started advising Plaintiff that he needed to comply with the PHA's residency requirement. In January 2014, he was told that he needed to provide a letter explaining why he could not move to Philadelphia County. Plaintiff responded, stating that he has joint custody of his daughter and, pursuant to a Superior Court of New Jersey order, he is not permitted to have parenting time in Philadelphia. In April 2014, he was eligible for a raise, but did not receive one. That month, his Union informed him that he had received a residency waiver from the PHA. However, in June 2014, Union business agent Billy Taylor told Plaintiff that the Union needed to provide PHA with the documentation to support the waiver. Because Billy Taylor passed away soon after this conversation, he did not send the supporting documents to the PHA. Plaintiff provided another copy of the documents to the Union president, Thomas Kilkenney, who assured him that the documents supporting the waiver would be sent to the PHA.

In September 2014, Plaintiff and ten other in-house employees were fired by the PHA for failure to comply with the residency requirement. Five were quickly rehired as provisional employees, but Plaintiff was not. After he was terminated, the Union failed to file a grievance on

[1] Plaintiff fails to explain the terms "provisional," "in-house," and "journeyman."

Plaintiff's behalf. Plaintiff argues that he was terminated as an in-house employee, and not rehired as a provisional employee, despite having a legitimate reason why he could not fulfill the residency requirement, in retaliation for having verbally opposed his employment change to "in-house" status. He argues that the PHA used the residency requirement as a pretext for firing him.

## II. Standard of Review

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's plain statement does not possess enough substance to show that plaintiff is entitled to relief.[2] A Court may look to the facts alleged in the complaint, its attachments, and documents incorporated into the complaint by reference or explicitly relied upon in the complaint.[3] In determining whether a motion to dismiss should be granted the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[4] However, something more than a mere *possibility* of a claim must be alleged; plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[5] Furthermore, courts are not bound to accept as true legal conclusions couched as factual allegations.[6]

## III. Discussion

In response to the Motions to Dismiss, Plaintiff asked the Court to voluntarily dismiss certain claims set forth in the Amended Complaint, including: 1) his claims for breach of fiduciary duty (in Count I); 2) his claims for violation of Pennsylvania wage laws (Count II) and

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

[3] *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994); *Winer Family Trust v. Queen*, 503 F.3d 319, 328 (3d Cir. 2007); *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

[4] *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *Fay v. Muhlenberg Coll.*, No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[5] *Twombly*, 550 U.S. at 570 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

[6] *Id.* at 555, 564.

the federal Fair Labor Standards Act (Count IV), and 3) the ERISA claims against the PHA defendants for terminating him to avoid paying benefits (Counts VI and VII).

He opposed the Motions to Dismiss with regard to the following claims: 1) a breach of contract claim for failure to raise his salary and failure to provide a residency waiver (Count I); 2) an unjust enrichment claim for failure to provide a pay raise to which Plaintiff believes he was entitled (Count III); 3) §1983 claims for retaliation for exercising rights under the First Amendment, asserted against the Union and PHA (Count V); and 4) an ERISA claim against the Union for failure to provide unspecified contractually defined benefits (Count VI).

With regard to these claims, Defendants argue: 1) that the state common law claims for breach of contract and unjust enrichment set forth in Counts I and III are preempted as a matter of law by Section 301 of the Labor Management Relations Act, as a collective bargaining agreement covers the terms and conditions of Plaintiff's employment; 2) that the § 1983 claims in Count V must be dismissed because Plaintiff has not pled facts indicating that he was engaged in protected speech, or that his termination was connected to any speech; and 3) that the ERISA claim against the Union in Count VI must be dismissed for failure to state a claim.

A. State Law Claims and Federal Preemption[7]

Plaintiff brings claims for breach of contract, alleging that PHA failed to provide him with a raise to which he was entitled under the terms of a contract, and that PHA failed to provide him with a residency waiver to which he was entitled by contract. In the alternative, he pleads that PHA was unjustly enriched by the failure to pay him raised wages.

To the extent that Plaintiff's state law claims require the Court to interpret the CBA between the Union and PHA, state law is preempted.[8] "[I]f the resolution of a state-law claim

[7] Plaintiff asks the Court to strike the copy of the CBA attached to the Motions to Dismiss. The Court will not reach the question of whether the Court *may* rely upon the content of the CBA in resolving the pending motions, because it need not and does not rely upon the content of the CBA to resolve them.

depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute."[9]

Plaintiff's first breach of contract claim in Count I, and the unjust enrichment claim in Count III, are based on the same factual allegation: that in April 2014, he did not receive a raise to which he was entitled. Although Plaintiff does not expressly state that he was entitled to this pay raise under the terms of the CBA, he fails to point to any other agreement or contract which gave rise to the alleged obligation. Therefore, the Court would have to interpret the terms of the CBA to determine whether PHA was in breach of contract (or, in the alternative, that PHA did not breach the contract but was nevertheless unjustly enriched by the failure to pay Plaintiff a salary increase), and both claims must be dismissed as preempted by federal law. To the extent that Plaintiff believes he was entitled to a pay raise based on some agreement other than the CBA, the breach of contract claim must be dismissed for failure to indicate the source of the alleged contractual obligation.

Count I also alleges that PHA breached some contract when it failed to waive the residency requirement for Plaintiff. Plaintiff fails to indicate whether the CBA creates a duty to issue waivers, or whether he is alleging the breach of some other, unspecified contract. To the extent that the CBA governs this issue, the state law breach of contract claim is preempted; to the extent that it does not, the claim must be dismissed for failure to indicate the source of the

---

[8] *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 403-05 (1988) (citing *Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962)).

[9] *Id.* at 405-06.

alleged contractual obligation to provide a waiver. For these reasons, the Court will grant the defendants' motion to dismiss Counts I and III of the Complaint.

B. Retaliation Claim

Plaintiff also asserts a § 1983 claim, alleging that he was denied a residency waiver and terminated in retaliation for voicing opposition to his change in status from provisional employee to in-house employee of PHA.

The Union Defendants argue that they are not governmental entities, and thus are not capable of infringing Plaintiff's First Amendment protections and are not subject to suit under § 1983. The Court holds that Plaintiff has alleged no facts from which the Court can find that the Union Defendants acted under color of state law in dealing with Plaintiff. Thus, the retaliation claims against the Union Defendants must be dismissed. However, even if the Union were considered a state actor, pursuant to the symbiotic relationship test or some other theory,[10] the § 1983 claims for retaliation would be dismissed for the reasons set forth below.

To state a § 1983 claim for retaliation for exercising his First Amendment rights, a plaintiff must allege facts demonstrating that 1) he engaged in activity which is protected by the First Amendment; 2) the defendants retaliated against the plaintiff in a manner that would be sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and 3) the protected activity was a substantial factor in the adverse employment action.[11] As a public employee, in pleading the first element, Plaintiff must allege, *inter alia,* that he spoke as a private citizen on a matter of public concern.[12] Because he names two PHA Defendants, he "must show

[10] *See Luck v. Mount Airy #1, LLC,* 901 F. Supp. 2d 547, 560-61 (M.D. Pa. 2012).

[11] *Morris v. Philadelphia Hous. Auth.*, 487 F. App'x 37, 39 (3d Cir. 2012); *Thomas v. Independence Twp.*, 463 F.3d. 285, 296 (3d Cir. 2006).

[12] *Connick v. Myers*, 461 U.S. 138, 142-43 (1983).

that each defendant individually participated or acquiesced in each of the alleged constitutional violations."[13]

Here, Plaintiff claims that he complained, at Union meetings, about the change in his status from a provisional to an in-house employee of PHA.[14] Although the allegations are sufficient with regard to whether he spoke as a private citizen, the Court cannot infer from the allegations that, in complaining about his change in status, he spoke on a matter of public, rather than private, concern. He alleges that he complained about an unfavorable change in his benefits when he became an in-house employee, as well as about the applicability of a residency requirement with which he knew he would be unable to comply. The Court cannot find that these complaints were aimed at issues of public concern; they were purely private grievances about a change in his own benefits and obligations. For this reason, the Court will dismiss this claim.

As additional support for this ruling, the Court notes that, in order to demonstrate the requisite causal link, plaintiffs typically must allege either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[15] With regard to causation, Plaintiff sets forth no factual allegations from which the Court can infer that the PHA Defendants were even aware of the statements he made during union meetings. Even if the PHA Defendants were aware of the speech, Plaintiff has failed to set forth evidence from which the Court can infer that

---

[13] *Smith v. Centr. Dauphin Sch. Dist.*, 355 F. App'x 658, 667 (3d Cir. 2009).

[14] Although Plaintiff does not specifically state why the change in status was problematic for him, the Court infers from the Complaint that Plaintiff knew he would be unable to comply with the residency requirement, which applies to in-house but not provisional employees, due to the terms of a child custody order from the New Jersey courts. However important to Plaintiff, this is purely a personal matter, and not a matter of public concern.

[15] *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 555 (E.D. Pa. 2013) (citing *Lauren W. (ex rel. Jean W.) v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007)).

his speech was a motivating factor in his termination. Plaintiff was terminated, along with nine other employees, for failure to comply with the City's residency requirement, two years after complaining of his status change in a Union meeting, and points to no intervening pattern of antagonism. The Court cannot infer any retaliatory motive from the facts alleged.

C. ERISA Claim

Plaintiff alleges that the Union and Union president breached fiduciary duties to provide contractually defined benefits to Plaintiff, in violation of ERISA.[16] In response to the motion to dismiss, which asked the Court to dismiss the claims pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure to join the relevant benefit funds, Plaintiff asserts that what he intended to allege was that the Union defendants interfered with unspecified benefits. However, Plaintiff has not alleged what contractually defined benefits were interfered with, nor what duties Defendant owed to him with regard to those benefits, and has pled no facts from which the Court can infer that the Union defendants interfered with the administration of any benefits to Plaintiff. Accordingly, the ERISA claims will also be dismissed without prejudice as insufficiently pled to state a claim.

## IV. Proposed Second Amended Complaint

Plaintiff attached a proposed Second Amended Complaint to his brief in response to the Motions to Dismiss. The Court will grant leave to amend the breach of contract/unjust enrichment, retaliation, and ERISA claims, but wishes to give Plaintiff the opportunity to address the pleading deficiencies discussed in this Memorandum Opinion in any amendment. Therefore, Plaintiff may choose to rely upon the proposed Second Amended Complaint which was provided

---

[16] The Court assumes that Plaintiff did not intend to assert Count VII against the Union and its president, as that Count alleges that "Defendants violated Section 510 of ERISA, 29 U.S.C. § 1140, by terminating Plaintiff for retaliatory purposes. . ." and PHA, not the Union, terminated Plaintiff's employment. Plaintiff voluntarily dismissed all ERISA claims against the PHA, and did not attempt to reassert the Section 510 claim set forth in Count VII in his proposed Second Amended Complaint.

to the Court as an exhibit, or he may choose to redraft and submit a revised Second Amended Complaint. In either case, the Second Amended Complaint must be filed of record as a new docket entry by March 21, 2016.

## V. Conclusion

Plaintiff has conceded that Counts II, IV, and VII of the Amended Complaint, as well as the Breach of Fiduciary Duty claims set forth in Count I, and the ERISA claims against the PHA in Count VI must be dismissed. The Court, accordingly, dismisses these claims with prejudice.[17]

For the reasons set forth herein, the Court will dismiss the remaining claims in Counts I and VI and the claims in Counts III and V without prejudice. Plaintiff may file a Second Amended Complaint, to attempt to remedy the pleading deficiencies with regard to the breach of contract/unjust enrichment claims, the retaliation claims, and the ERISA claim against the union, on or before March 21, 2016. Failure to do so will result in the dismissal of these claims with prejudice.

[17] The proposed Second Amended Complaint does not attempt to replead the claims that Plaintiff voluntarily dismissed in his response. Accordingly, the Court dismisses those claims with prejudice.